TJM Columbus LLC TJM Columbus LLC All right, we'll hear first from Miss Belle. Good morning. Morning. Morning. May it please the Court. My name is Jennifer Belle and I'm here on behalf of Appellant Ali Arendler. I'd like to first begin with the subject matter jurisdiction issue and then turn to the SEPA adverse actions issue. First with respect to jurisdiction, the record in this case, viewed in its entirety, compels the conclusion that diversity jurisdiction is lacking. Arendler alleged that he was a member of each of the defendant LLCs at the time this action was commenced. But really this whole case is about whether he was or he wasn't, isn't it? Your Honor, we believe that not only did he allege this, but that the operating agreements make clear that he became a member at the time that the operating agreement was executed. And that that is a distinct issue from whether or not his interests vested. Where is that actually alleged though? Because the complaint says that his interests actually did not vest. That's one of the things he affirmatively alleges, that the interests had not vested. And Your Honor, I'm specifically in the second amended complaint. In paragraph 144, Mr. Arendler was a member of the limited liability companies as set forth in the operating agreements. And then. That's the issue, that it's as set forth by the operating agreement. But then he also alleges that he was terminated before that very interest in the operating agreement vested. He does allege that he was terminated prior to the vesting, but he does not allege that he was no longer a member with respect to those LLCs. And that we think is a critical distinction. These are two separate issues. Whether or not he was a member and whether or not his interests vest. And we believe that the language of the operating agreements bears this out. So to go back to his allegations for just one moment, there's also Mr. Arendler's deposition testimony where he very clearly said, and this is on page eight, in response to the question, and so at the time you filed the lawsuit in the federal court in Florida, your testimony is you were a member of each of those three entities, correct? Answer, yes. And so that's very clear with respect to his allegation that he believed he was a member of those LLCs. But turning to the language of the actual operating agreements. And then he disputed that in the district court, right? That was litigated. And then he disputed that and insisted that the court did have to. We believe that Mr. Arendler's claims factually with respect to being a member have remained consistent. We acknowledge that in response to the motion for summary judgment, he did in fact oppose that part of defendant's motion for summary judgment. On a factual basis. We still maintain that. Yes or no? Was it on a factual basis? We believe it was on a legal basis that he had made that position clear in response to summary judgment. I guess I'm a little confused by that. Maybe you can explain to me the difference or why his position now is the same as it was when he tried to convince the court that it didn't have jurisdiction, or that it did have jurisdiction. On summary judgment, Mr. Arendler relied on the fact that defendants were essentially denying his membership. I would point out that defendants have repeatedly stated on summary judgment, on a motion for consideration, made assertions very clearly that Mr. Arendler was a member and that that defeated diversity. That was something that they took a very strong position on and have now completely reversed. Your position is, instead of being that your client hasn't changed his position, your position now is that opposing that the defendants have changed their position. We have changed our position with respect to whether or not there's diversity. That is accurate. Why doesn't the outcome of this case determine that anyway? Obviously you had to have had jurisdiction, but this seems to have been a factual issue that the district court preliminarily decided and then at the end of the case, it turns out that in fact, the court has rejected the notion that your client was a member. Your Honor, for two reasons. First, because of the fact that the appropriate time of the determination is at the time of the filing of the complaint. I agree, but we can't erase what's happened since then. There was a determination that was made at that point in time, then the rest of the case went forward and now we have a jury verdict which essentially confirms the district court's decision that there was jurisdiction in the first place. Why isn't that the case? We believe that the terms of the operating agreements, and I'd like to go through a couple of key provisions, make it so that regardless of the result in the district court, Mr. Remler has not been properly removed as a member of these LLCs or at least there's no evidence in the record that he has been. Beginning first with the definition of member in the operating agreements. This is in section 1.1, member is defined as each person holding a percentage interest in the company from time to time. It then expressly states that there are certain members at that time including the trust, Matthew McCarthy, Dale Schooley, Mr. Remler. That is one basis upon which we are saying that it's clear from the operating agreements that he was a member at the time that this was executed. The definition of member notably does not say each person holding a vested percentage interest. It says each person holding a percentage interest period. He held a percentage interest per this agreement. It was unvested, but he held a percentage interest and we believe that that confirms that he was in fact a member at the time. The agreement also says that if the person is terminated for any reason, cause or no cause, any interest including unvested interest disappear at that moment. Correct. I would like to deal with that forfeiture clause next, Your Honor. In the forfeiture clause, the language essentially says that it forfeits the Remler profits interest, a defined economic interest. It does not say, and it certainly could have said, a Remler ceases to become a member. It doesn't say that his membership shall be forfeited or revert. It also does not say that a Remler shall be removed from the company. They certainly could have said those things and did not say those things. They said that his profit interest would be forfeited. I think that critically, if you look at section 9.15 of the agreements, there's a provision that talks about what should happen if there's a forfeiture. That is that specifically, in the event that a profits interest member forfeits his or her profits interest in the company pursuant to the terms of the agreement, the members agree and acknowledge that the agreement will be amended to reflect each member's updated percentage interest in the company. There's no evidence that that has occurred, that he was removed. That is certainly something that we would have expected to see if he had been removed as a member. There's also further information with respect to this amendment that states that this amendment would need to be in writing and that it would need to be approved by a majority of the aggregate percentage interest of all members. If it was the case that his membership forfeited automatically, we don't believe that this provision would be necessary with respect to the amendment and yet this provision is there. We don't think that this is surplusage. We think it's an essential provision in the agreement and that therefore, based both on the distinction between being a member and having a vested or unvested interest and on the fact that there's been no amendment, that the agreement itself supports the fact that Arendler at the time of filing, as he alleged, was a member of the LLCs. Second, with respect to the post-trial declaration, we believe that this actually has raised more questions than it has answered, specifically because of the distinction made in this declaration that states the members of the LLC are, instead of what could have easily stated, which would have been the members of the LLC are and were at the time of the filing of the complaint. That language is not in the declaration and should have been based on what was ordered with respect to the disclosure. Critically, it does not address the declaration, the issue of whether or not Mr. Arendler was a member, nor does it address another member that Mr. Arendler alleged in the second amended complaint was a member and that is Matthew Bradley. This is alleged in the second amended complaint, paragraphs 9 through 11. Mr. Arendler believes that Mr. Bradley holds a 1% interest in the LLCs. It's alleged in the complaint and yet not addressed at all in the declaration that was filed by the defendants. It is both on the three facts here, one having to do with the allegations in the complaint and the deposition testimony, second on the issues and the actual provisions of the operating agreements and third on the deficiencies in the declaration itself that we believe that diversity here was lacking. I'm going to ask you a question on a different issue. You have alleged the district court got it wrong when the district court said that New Jersey's wage collection law does not provide a private right of action. Under New Jersey law, we have a host of different laws relating to this area. We have the wage payment law, we have the wage and hour law, as well as what you're challenging, the wage collection law. My question to you is both the wage payment law and the wage and hour law have explicitly created private rights of action while the wage collection law does not. Why shouldn't we take that to mean that when New Jersey wants to create a private right of action, it does so explicitly? No, Your Honor. We believe that the language in the wage collection law, including the language relating to the fact that anything over $50,000 would need to be waived through the administrative process, the language stating that nothing in this provision will preclude bringing a civil action, this is all in that section having to do with the New Jersey collection law, supports our position that there is a private right of action. And also specifically the fact that the definition of wages under the collection law is broader than the definition that is in the wage payment part of the statute. We believe that if it was the fact that this was merely about a kind of administrative framework as the Mahaner Court found, that that language and that definition with respect to wages would not be necessary. And that looking at all of the provisions together in the New Jersey collection law sections supports the position that there is a private right of action there. And importantly, this is consistent with the finding of the New Jersey court in the parallel action which allowed us to amend the complaint to specifically add the New Jersey collection law and specifically, you know, had the parties brief the issue with respect to whether or not that law was applicable. Had those supplemental briefs submitted, this is in the Part B of our appendix at the very end, and then allowed an amendment. All right. Thank you very much. You've reserved three minutes. We'll hear next from Ms. Lopez. Thank you, Your Honor. Good morning. Good morning. May it please the court. Lindsay Lopez on behalf of the appellees. I'm just going to ... Mr. O'Rendler has raised 11 separate issues on appeal. None of them justify reversal. The evidence in this case demonstrates that Mr. O'Rendler did not have a vested membership interest in these LLCs. His interest did not vest until five years from the effective date of the operating agreement, so he did not ... The interest that he was granted was a profits interest, and it was an unvested profits interest, and because he was not vested on the date ... He was not an employee on the date that those interests vested, he never became a member of the LLCs. Right on the other side there, has said, well, if you look at 9.1.5, the only thing that would have divested him of was his profits interest, but he was still a member. What are your thoughts on that? The first time I'm hearing that this morning, I was looking at the operating agreement ... You can make new arguments. Absolutely. I was just looking at the operating agreement. I think what he was granted in the operating agreement was a profits interest. That was the type of interest that he was given under the operating agreement, and so I would say that that interest did not vest, and that the intent of that language in the operating agreement that says everything terminates, if you're no longer an employee, all your interests terminate, controls here. Is it possible under the operating agreement that you can be a member without a profit interest? I don't know the answer to that, Your Honor, but I believe the interest that he was given was a profit interest. I would also point out that he does not allege in the complaint that he is a member. He actually identifies who he thinks the members of the LLCs are. He does not identify himself. He specifically identifies the members because he understands, obviously, that that's important for determining diversity with LLCs. He specifically states that none of the other defendants are New Jersey citizens, so he's clearly saying that he is not a member of the LLCs, and he doesn't ask for a declaration in this case. There was no request for a declaration that he was a member. Instead, what he asks for in this case is much more akin to what the district court found in the Sims case. In that case, what the plaintiff alleged is there was an agreement to make me a partner, and you breached it, and I should be made a partner. The relief that I'm asking for is to be made a partner, to have my interest acknowledged here, and the district court in that case said, well, if I accept all your allegations as true, you should be a partner. You should be a member here, and that argument was rejected and said that's going to be a post-filing after the complaint if there's a declaration or something that makes him a member after the fact that doesn't impact the diversity analysis at the time the complaint is filed. So, let me ask you something. When you're talking about his interest, you say that it was purely a profit's interest. Is that right? My understanding, I don't have the agreement right now. I'm looking at paragraph 1.13, well, let me go back a little bit here. Paragraph 1.11 says member shall mean each person holding a percentage interest in the company from time to time. Paragraph 1.13 says percentage interest shall mean a member's interest in the company, whether a capital interest or a profit's interest expressed as a percentage of the total member interest in the company, and then it says the percentage interest of each member as of the date of this agreement is as follows, Aaron Lurr, 5%, parenthesis, profit's interest per Article 9. It does seem to suggest that that is purely a profit's interest, I guess, but maybe I'm missing something here. That was my understanding when I reviewed the operating agreements, is that what he was granted was a profit's interest, and that profit's interest doesn't vest for five years, and if he's not an employee after five years, he never obtains the profit's interest that is designated in the operating agreements. And so, the jury verdict in this case, in addition to the fact that he did not allege that he was a member, and that he instead alleged that his employment was terminated and that was interfered with his membership ever vesting, and in addition to the fact that he factually opposed the summary judgment motion and said, no, what I was alleging was that I was a former member, the jury verdict in this case resolves the question. This is a factual challenge within the framework of this court's Lawrence v. Dunbar case, and that allows you to look outside just the facial allegations and to really look at the whole record to determine the citizenship, and Mr. Rindler came to the jury and asked them to determine that he had a vested 5% interest in these entities, and the jury rejected that. And so, the whole record in this case establishes that there was diversity of jurisdiction, and that's consistent with Mr. Rindler's allegations, that's been consistent with his position all the way through this case until he lost on his claims, and this is sort of a hail Mary after the fact argument to try and avoid the consequences of the jury verdict in this case. Can you speak to the argument that the declaration that was submitted was either deficient or purposely evading the issue of who the members were at the time? That's really a red herring here. The question that this court raised as a jurisdictional question related really specifically to the trust, so there were a lot of very detailed, there's a lot of very detailed information given regarding the beneficiaries of the trust and how the beneficiaries may or may not have changed over time. There was also an identification of the members of the LLCs. Mr. Rindler is not claiming that any of the other members of the LLCs are New Jersey citizens that would feed their section. He's really only claiming that he is a member of the LLCs, and he doesn't need a declaration on that, and he's attempting to twist Mr. McCarthy's declaration to suggest that it's somehow an implicit acknowledgment of his membership interest, which could not be farther from the truth. Mr. McCarthy testified very specifically about this at trial. We cited the pages of his testimony in our answer brief, and Mr. Rindler acknowledged in his response to the summary judgment motion that the defendants had always taken the position that he was not a member, that he did not have a vested interest. That is throughout his response on this issue in his summary judgment motion, or in his response to the summary judgment motion, and so there's nothing in the declaration that is intentionally vague or misleading. The district court reviewed it, considered it, and said, yes, this is a sufficient declaration. This establishes the citizenship of all the LLC members, and I find that I have diversity of jurisdiction. I want to touch briefly on some of the other issues that were raised in the appeal, specifically with the New Jersey wage collection law. This is an issue that the district court of New Jersey considered and analyzed in detail in the Mahaner case in July 2022. The district court in our case reviewed the Mahaner case and accepted that analysis, which is really detailed and really compelling analysis, and it looks at the actual statutes that this wage collection law is within, and the court noted, first, there's nothing in that portion of the statute that provides for private right of action. The case law interpreting it universally refers to it as sort of an administrative framework where administrative claims can be. There is the plaintiff didn't identify and still hasn't identified any cases that have a private right of action under the wage collection law. The Mulford case was specifically reviewed and rejected by the Mahaner court. They said that's not a claim under the WCL. That's under the New Jersey wage payment law, which is a separate section which does have a private right of action. In his briefs, Mr. Rindler has suggested that the Myers v. Heffernan case also reflects a private right of action. That case is procedurally complex, and it is a little confusing to track it through. There is a passing reference in that case to 3411-66, which is a part of the wage collection law, but it is not referring to a private right of action under the New Jersey wage collection law. It's just suggesting that there may be a catch-all within that statute that may allow private rights of action that are not otherwise specifically provided for. That case predates the Mahaner case, and the Mahaner analysis is much more compelling and more specific on this. I think it's dicta, it's not controlling, and it's rejected by the Mahaner court. There are no cases that have recognized a private right of action under this statute. The district court properly accepted that analysis and granted judgment as a matter of law on those claims. There were a number of arguments related to the jury instructions. I know this court is aware that the district court has very wide discretion in the style and the wording of the jury instructions. The court only abuses that discretion when the requested instruction correctly states the law. The instruction dealt with an issue that was properly before the jury, and the failure to give the instruction resulted in prejudicial harm to the requesting party. There are a few specific instructions that are at issue related to the 1992 conviction, related to specific instructions on bonus, severance payments, benefits. For some of these we raised in our brief. We don't know that the specific requests for instructions on severance or bonus were actually raised in the trial court, but regardless, nothing prevented Mr. Rindler from arguing his theory of the case on those. The Stefanovich and Robinson cases that are cited in our briefs are very clear on this. This court has repeatedly held that if the instruction allows the party to fully argue their theory of the case, then there's no prejudice as a result of not giving the requested instruction. In this case, the jury was specifically instructed on compensatory damages, and the fact that compensatory damages include any amounts that he would need to make him whole, and Mr. Rindler was allowed to argue and argued at length in closing that that included bonus, benefits, and severance. There was also a specific instruction on credibility, and so there was no need for a specific instruction regarding the 1992 conviction. Instead, he was permitted to argue that that goes to credibility, and the instructions allowed him to fully argue that theory of the case. He was allowed to admit that evidence over objection, and allowed to argue it over objection. There were a couple of arguments regarding the CEPA claims, the Conscientious Employee Protection Act, and specifically regarding whether the jury instruction on that matter should include other adverse actions. I wanted to point out to the court that first, in his briefing, Mr. Rindler alleges that there were other adverse actions, including other employees ceasing talking to him and freezing him out. That's not supported by the record. If you look at the record, this issue comes to a head on July 13th. On July 15th, Mr. Rindler is traveling to Turkey. He's going to be out of town for a number of weeks, and Mr. McCarthy reaches out to him and says, let's talk about this when you get back. Why don't you take some time on your vacation to relax, and we'll see if we can work this out when you get back. A few days later, Mr. Rindler responds and affirmatively states that he has definitely decided he will not be involved with the clearage in any way, shape, or form. If it affects my deal with you on any other hotels, that's fine. The district court asked during the charge conference, when there was a request for an instruction about other adverse events, what other adverse events are you referring to here, and Mr. Rindler's counsel said, well, he had a loss of compensation. There was no discussion of this freezing out or any of these issues, and the court said, well, the loss of compensation is his damages. It's a result of this termination, but the only evidence about termination is as a result, there is no evidence to support instruction for other adverse effects. Thank you very much. We would ask the court to affirm in all regards. All right. Thank you very much. Ms. Bell, you've reserved three minutes, and I'd like to ask you to address the question that I addressed to Ms. Lopez, which is about section 1.13 of the operating agreement where it defines percentage interest to mean a member's interest in the company, whether a capital interest or a profit's interest, and it defines Aaron Lurr at 5% and then specifically says profit's interest per Article IX. Yes, Your Honor. We believe that this supports our position that he was, in fact, a member. It's based, if you look at it in the context of the other provisions of the operating agreement. Why is that so? It seems to me like what this is saying is he was a profit's interest member, and if his profit's interest status was discontinued under the operating agreement, then it seems like his entire member status was discontinued. What am I missing here? Your Honor, I would go back to the other provisions that established him as a member at the signing and also the provisions with respect to what should happen if someone forfeits their interest. I would also point out that I believe there are other provisions in the agreement that make it clear that this distinction between vested and unvested is not the difference between being a member or not. Let me ask you to specifically address this. Section 1.11 defines member. It says, it shall mean each person holding a percentage interest in the company from time to time, blah, blah, blah. Then, because it uses the term percentage interest, we go to the next defined term. Section 1.13 says percentage interest shall mean a member's interest in the company, and then it specifies whether a capital interest or a profit's interest, expresses a percentage of the total member interest in the company, and then it specifies what those percentage interests are of each member. It says, Aaron Lurr, 5%, and it expressly defines it as a profit's interest for Article 9, which seems to me to suggest that that is the type of member he is. He is a profit's interest member. That is his entire interest in the company. It's a 5% profit's interest membership interest. I may be wrong about that, but I need you to walk me through how you get to why I'm wrong about that. We don't dispute that he was a profit's interest member, but I maintain that 1.13 and the fact that he's a profit's interest member doesn't change the fact that he was a member and that that's consistent with the language in this resolution. That's what I'm asking you to walk me through because it seems to me that when he lost his profit's interest member status, that was the entirety of his member status, and that's what I need you to show me. That's what we believe is different, that being a member is different and that he should have been removed as a member. I understand what your argument is. I'm not understanding how you get there, so if you could maybe walk me through the parts of the agreement that you're relying on that support that, that would be helpful to me. I would like to get to the SEPA argument if I can just for a moment. I know that I'm almost out of time. All right. Go ahead. Thank you. I'll give you a brief moment for that. Thank you, Your Honor. Just very briefly on the SEPA issue, I think this is critical on this issue of the adverse actions. First, I would say that opposing counsel noted that during the charge conference, he asserted that the only issue that was raised was as to compensation. I would note that at the end of that conversation, counsel asked to be heard further on that issue, and the court said no, and that it was broader than compensation at the charge conference. There was a specific discussion with respect to a variety of things that might be adverse actions, but there was also a request to speak more on it, but specifically on this issue of being frozen out, there's trial testimony that's very clear on this, and this would be in the direct examination of a Rentler on page 138. It's very clear that he believes responsibilities were being taken away from him, that Mr. DeWinney was being given authority over the comedy club, and in some ways over the clearage itself, and that that was diminishing him in his position. It's clear under the case law that this kind of small acts can cumulatively make a claim for a retaliatory action, and we think that this does not flow from the termination, but is in fact something independent that the jury should have been charged with with respect to an adverse action. Further, the issues with respect to compensation, and the issues with respect to not being given his bonus, that is consistent with a theory that Mr. Rentler potentially resigned, and so there was not a termination in terms of an adverse action, which was a theory that defendants asserted, but that he was still retaliated against by not receiving his bonus, by being denied his severance, by being denied his equity interest, and that is why we believe that those things are not a consequence of the termination, but were in fact items that the jury should have been charged with, and been allowed to decide that perhaps Mr. Rentler resigned, but he was still retaliated against in that he was not terminated, but he was deprived of very significant compensation and severance in an act of retaliation, and there was no reason not to charge that. Alright, thank you very much, we appreciate your argument. Thank you, Your Honor.